## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | | |
|---|---|---|
| DANA BOHANNON and | ) | |
| SEAN BOHANNON, M.D. in their | ) | |
| Capacities as the next friends, parents, | ) | |
| and on behalf of | ) | |
| WILLIAM E. BOHANANNON, | ) | |
| a minor child, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| Vs. | ) | |
| | ) | CIVIL ACTION FILE NO.: |
| FLOYD HEALTHCARE | ) | |
| MANAGEMENT, INC. d/b/a FLOYD | ) | |
| MEDICAL CENTER, STEPHEN M. | ) | _____ |
| BAXTER, M.D., STEPHEN BAXTER, | ) | |
| M.D., P.C., BEACON ANESTHESIA | ) | |
| & MEDICAL CONSULTANTS, INC., | ) | |
| GEORGIA GROUP SERVICES, LLC, | ) | |
| JOHN DOE CORPORATION, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES

COME NOW Dana Bohannon and Sean Bohannon, M.D. in their capacities as the next friends, parents, and on behalf of William E. Bohannon, a minor child, Plaintiffs in the above-styled civil action, and file this, their Complaint for Damages, respectfully showing this Honorable Court the following:

## THE PARTIES

1.

Plaintiffs are married to each other and are residents/domicillaries of the State of Alabama.  They are the parents of William Emmett Bohannon, who was born on October 13, 2011 at Floyd Medical Center in Rome, Floyd County, Georgia.

2.

Defendant Floyd Healthcare Management, Inc. d/b/a Floyd Medical Center, hereinafter "Floyd," is a nonprofit corporation existing under the laws of the State of Georgia for the purpose of engaging in the business of rendering professional medical services to the public for compensation, which corporation is subject to the jurisdiction of this Court.  Defendant Floyd owns/operates/manages Floyd Medical Center and may be served with process of this Complaint by serving its registered agent, Mr. C. Wade Monk, at 420 East Second Avenue, Suite 103, Rome, Floyd County, Georgia.

3.

Defendant Stephen M. Baxter, M.D., hereinafter "Baxter," is licensed to practice medicine in the State of Georgia and is named as a Defendant in the present lawsuit in his individual capacity and as an

employee/partner/agent/contractor/member of Defendant Floyd Healthcare Management, Inc. d/b/a Floyd Medical Center, Defendant Stephen Baxter, M.D., P.C., Defendant Beacon Anesthesia & Medical Consultants, Inc., Defendant Floyd Physicians, LLC, Defendant Georgia Group Services, LLC, and/or Defendant John Doe Corporation, Inc. Defendant Baxter may be served with process of this Complaint at 2546 East Hermitage Rd., Kingston, Floyd County, Georgia.

4.

Defendant Stephen Baxter, M.D., P.C. hereinafter "Baxter, P.C.," is a domestic corporation existing under the laws of the State of Georgia for the purpose of engaging in the business of rendering professional medical services to the public for compensation, which corporation is subject to the jurisdiction of this Court.  Service may be perfected upon Baxter, P.C. by serving its registered agent, Stephen Baxter, at 2546 East Hermitage Rd., Kingston, Floyd County, Georgia.

5.

Defendant Beacon Anesthesia & Medical Consultants, Inc., hereinafter "Beacon," is a domestic corporation existing under the laws of the State of Georgia for the purpose of engaging in the business of rendering professional medical services to the public for compensation, which corporation is subject to the jurisdiction of this Court.  Service may be perfected upon Beacon by serving its

Chief Financial Officer, Stephen M. Baxter, at 2546 East Hermitage Rd., Kingston, Floyd County, Georgia.

6.

Defendant Georgia Group Services, LLC., hereinafter "GGS," is a domestic corporation existing under the laws of the State of Georgia for the purpose of engaging in the business of rendering professional medical services to the public for compensation, which corporation is subject to the jurisdiction of this Court. Service may be perfected upon GGS by serving its registered agent, CT Corporation, 1201 Peachtree Street, NE, Atlanta, Fulton County, Georgia.

7.

Defendant John Doe Corporation, hereinafter "Doe Corp." is an unidentified domestic corporation existing under the laws of the State of Georgia for the purpose of engaging in the business of rendering professional medical services to the public for compensation, which corporation is subject to the jurisdiction of this Court. Defendant "Doe Corp." is subject to the jurisdiction and venue of this Court by virtue of being a joint-tortfeasor. Service may be perfected upon Doe Corp. by serving its registered agent, once the identities of Doe Corp. and its registered agent are determined.

8.

In October 2011, and at all times pertinent and material to this Complaint, Defendant Baxter was the employee/partner/agent/contractor/member of Defendant Floyd, so that any acts or omissions of Defendant Baxter are chargeable to and attributable to Defendant Floyd, by virtue of the relationship between it and Defendant Baxter.

9.

In October 2011, and at all times pertinent and material to this Complaint, Defendant Baxter was the employee/partner/agent/contractor/member of Defendant Baxter, P.C., so that any acts or omissions of Defendant Baxter are chargeable to and attributable to Defendant Baxter, P.C., by virtue of the relationship between it and Defendant Baxter.

10.

In October 2011, and at all times pertinent and material to this Complaint, Defendant Baxter was the employee/partner/agent/contractor/member of Defendant Beacon, so that any acts or omissions of Defendant Baxter are chargeable to and attributable to Defendant Beacon, by virtue of the relationship between it and Defendant Baxter.

11.

In October 2011, and at all times pertinent and material to this Complaint, Defendant Baxter was the employee/partner/agent/contractor/member of Defendant FPLLC, so that any acts or omissions of Defendant Baxter are chargeable to and attributable to Defendant FPLLC, by virtue of the relationship between it and Defendant Baxter.

12.

In October 2011, and at all times pertinent and material to this Complaint, Defendant Baxter was the employee/partner/agent/contractor/member of Defendant Doe Corp., so that any acts or omissions of Defendant Baxter are chargeable to and attributable to Defendant Doe Corp., by virtue of the relationship between it and Defendant Baxter.

13.

In October 2011, and at all times pertinent and material to this Complaint, Defendant Baxter was the employee/partner/agent/contractor/member of Defendant GGS, so that any acts or omissions of Defendant Baxter are chargeable to and attributable to Defendant GGS, by virtue of the relationship between it and Defendant Baxter.

14.

In October 2011, and at all times pertinent and material to this Complaint, Defendant Floyd was the employer/contractor/supervisor of John/Jane Does 1-5, hereinafter "Does #1-5," so that any acts or omissions of Does #1-5 are chargeable and attributable to Defendant Floyd by virtue of the relationship between Floyd and Does 1-5. Upon information and belief, Does #1-5 were nursing staff employed/contracted by Defendant Floyd on the labor and delivery floor of Floyd Medical Center at the time that Mrs. Bohannon delivered William.

## JURISDICTION AND VENUE

15.

This Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1332. There is complete diversity of the parties and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

16.

This Court has personal jurisdiction over the parties.

17.

Venue is proper in the Northern District of Georgia, Rome Division, pursuant to L.R. 3.1(B) and 28 U.S.C. § 1391 because at least one of the

Defendants reside in this division and district and a substantial part of the events giving rise to this claim occurred in this division and district.

## FACTS COMMON TO ALL COMPLAINTS

### 18.

Plaintiffs herein reallege and reincorporate the allegations above-stated in their Complaint as if said allegations had been set forth fully herein.

### 19.

Plaintiff Dana Bohannon was approximately 38 weeks pregnant when she was admitted to Floyd Medical Center in the early morning hours of October 13, 2011, in active labor.  Her husband, Plaintiff Dr. Sean Bohannon, a family practice physician, was with her.

### 20.

At approximately 4:40 a.m., Dr. Krystyna Landt, an anesthesiologist, placed an epidural in Mrs. Bohannon's back at her L 3-4 for pain management during labor.

### 21.

While the first epidural placed by Dr. Landt provided initial relief, the pain relief was not long-lived.

22.

Mrs. Bohannon was dilated 8 cm when Defendant Dr. Stephen Baxter, an anesthesiologist, placed a second epidural at approximately 1:45 p.m.  The second epidural placed by Defendant Baxter included 1 mg. of Dilaudid, a narcotic pain reliever.

23.

Dilaudid is a very strong narcotic pain reliever that is not commonly used in epidurals given to women in labor.   Further, the dosage Defendant Baxter administered to Mrs. Bohannon, 1 mg of Dilaudid , was too high and unnecessary given the fact that there are other more commonly used drugs that could be utilized.   Additionally, if Dilaudid is given, Narcan should also be administered to mitigate any dangerous side effects that Dilaudid is known to cause, like respiratory distress.

24.

Less than one hour after Defendant Baxter placed Mrs. Bohannon with a second epidural containing 1 mg of Dilaudid, Mrs. Bohannon gave birth at approximately 2:40 p.m. to a boy whom she and her husband named William Emmett Bohannon.

25.

Shortly after his birth, Does 1-5 gave William back to Mrs. Bohannon in the delivery room to breastfeed and Does 1-5 left the room.

26.

While Mrs. Bohannon was nursing William, Mr. and Mrs. Bohannon noticed that William had turned blue and had stopped breathing.  He was approximately 1.5 hours old at this point.

27.

Upon noticing that William had turned blue and had stopped breathing, Plaintiff Sean Bohannon called for assistance.

28.

Dr. John E. Moss and Does #1-5 returned to Mrs. Bohannon's delivery room and determined that William was in respiratory arrest.  A code was called and William was resuscitated, intubated, and later was transferred via helicopter from Floyd Medical Center to the Neonatal Intensive Care Unit ("NICU") at T.C. Thompson's Children's Hospital in Chattanooga, Tennessee, where he stayed for approximately one month.

29.

As a result of his respiratory arrest which caused a lack of oxygen to his brain (anoxic brain injury), William is severely developmentally delayed.  At five weeks old, he began attending intensive physical therapy, occupational therapy, and speech therapy several times each week and continues to do that today.  Further, William sustained tracheomalacia from the intubation, mild hearing loss, and dysphasia requiring PEG, which caused him to be placed with a feeding tube in the NICU that he kept until months before his second birthday.  These medical issues continue to this day and will continue for the foreseeable future.

30.

In placing Mrs. Bohannon's second epidural, Defendant Baxter deviated from the accepted standards of care, and he failed to exercise the degree of skill and care that is ordinarily employed by the medical profession in general under like conditions and similar circumstances.  Specifically, Dr. Baxter deviated from the standard of care in at least the following ways: 1) By administering an overly large dose of a narcotic pain reliever, Dilaudid, to Mrs. Bohannon through the epidural when she was dilated at 8 cm; 2) By failing to administer Narcan to alleviate the potential side effects, like respiratory distress, of an overly large dose of Dilaudid; and 3) By failing to notify Mrs. Bohannon's obstetrician and/or

William's pediatrician that he had administered 1 mg of Dilaudid in Mrs. Bohannon's epidural so that the these physicians could be vigilant to watch out for potential signs of respiratory arrest.

31.

The accepted standards of care would require a physician in Defendant Baxter's position, and under the circumstances described herein, to either use a much, much smaller dose of Dilaudid or to use a drug that is more commonly used in epidurals for women in labor, like Fentanyl. Further, the accepted standards of care would also require a physician in Defendant Baxter's position and under the circumstances described herein to administer Narcan after administering Dilaudid and to notify Mrs. Bohannon's and/or William's other physicians that he had administered 1 mg. of Dilaudid in the epidural so that they could monitor both Mrs. Bohannon and William for respiratory distress/arrest. Had Baxter complied with the accepted standards of care, William would not have gone into respiratory arrest and suffered a sustained loss of oxygen to the brain, which caused his hearing loss and developmental delays.

32.

During the course of treatment and care provided to Plaintiff Dana Bohannon and William Bohannon, Does #1-5 deviated from the accepted standards

of care, and failed to exercise the degree of skill and care that is ordinarily employed by the nursing profession in general under like conditions and similar circumstances.   Specifically, Does #1-5 were negligent in at least the following ways: 1) Does #1-5 were aware that 1 mg of Dilaudid had been administered via epidural to Mrs. Bohannon and by extension, to William, but they did not take William to the nursery after birth to be monitored for signs of respiratory distress nor did they stay in Mrs. Bohannon's room to monitor William there; 2) Does #1-5 allowed Mrs. Bohannon to nurse William knowing that she had not been given Narcan to mitigate the effects of the 1mg of Dilaudid given to her in the epidural and knowing that the Dilaudid was transmittable from Mrs. Bohannon to William through both the placenta and her breast milk; and 3) Does #1-5 failed to notify Dr. Moss or another physician, including William's pediatrician, that Mrs. Bohannon had been given Dilaudid in her epidural without being given any Narcan so that Mrs. Bohannon's treating physicians could monitor her condition and William's condition closely for respiratory distress/arrest.

33.

The accepted standards of care would require nurses in Does #1-5's position, and under the circumstances described herein, to take William to the nursery instead of leaving him unattended with Mrs. Bohannon as 1 mg. of Dilaudid in an

13

epidural is an extremely large dose of a narcotic, which has a known side effect of leading to respiratory distress and/or arrest, especially since William received it through the placenta and also through Mrs. Bohannon's breast milk. Had Does #1-5 complied with the accepted standards of care, William's respiratory distress would have been monitored and his respiratory arrest and subsequent code could have been prevented.

34.

Had Defendant Baxter and Does #1-5 complied with the applicable standards of care, this would have significantly altered Mrs. Bohannon's and William's medical treatment and prevented and/or mitigated William's injuries within a reasonable degree of medical certainty.

35.

As a direct and proximate result of Defendants' negligence and failure to exercise that degree of care required by the medical and nursing profession generally, William Bohannon was injured and suffered damages as set forth herein and Defendants are responsible for the same.

## COUNT 1- MEDICAL MALPRACTICE

### 36.

Plaintiffs herein reallege and reincorporate the allegations above-stated in their Complaint as if said allegations had been set forth fully herein.

### 37.

Defendant Baxter and Does #1-5 had a duty to Mrs. Bohannon and her son, William, to adhere to the above-referenced standards of care during Mrs. Bohannon's labor and delivery of William.   Defendant Baxter and Does #1-5 breached the applicable standards of care, which directly and proximately caused William's injuries, as outlined herein, and these injuries have caused damages.

### 38.

Plaintiffs show that as a direct and proximate result of Defendants' negligence, Plaintiffs Dana and Sean Bohannon have incurred and will continue to incur, as William's parents, certain medical expenses for William's medical care and treatment necessitated by his injuries arising out of the negligent medical treatment provided by Defendants.  These medical expenses are long term damages that William himself will incur once he reaches the age of majority.

39.

As a result of Defendants' negligence, William has suffered and will continue to suffer into the future general damages, including, great pain, both mental and physical. Plaintiffs are entitled to general damages for William's pain and suffering, both mental and physical, in an amount to be determined by the enlightened conscious of a fair and impartial jury.

40.

Plaintiffs show that the sole cause of William's injuries and damages was the negligence of the Defendants and that the damages complained were the direct and proximate result of Defendants' negligence.

## COUNT 2: CLAIM AGAINST DEFENDANT FLOYD/BAXTER, P.C./BEACON/GGS/DOE CORP. UNDER RESPONDEAT SUPERIOR

41.

Plaintiffs herein reallege and reincorporate the allegations above-stated in their Complaint as if said allegations had been set forth fully herein.

42.

At all times relevant to the incident out of which this Complaint arises, Defendant Baxter was an employee/partner/agent/contractor/member of Defendant

Floyd, Defendant Baxter, P.C., Defendant Beacon, Defendant GGS, and/or Defendant Doe Corp.

43.

The tortious conduct of Defendant Baxter described throughout the Complaint was committed during and within the scope of his agency and/or employment with Defendant Floyd, Defendant Baxter, P.C., Defendant Beacon, Defendant GGS, and/or Defendant Doe Corp.

44.

As Defendant Baxter's principal and/or employer, Defendant Floyd, Defendant Baxter, P.C., Defendant Beacon, Defendant GGS, and/or Defendant Doe Corp is vicariously liable for the negligence of Defendant Baxter under the doctrine of respondeat superior.

**COUNT 3- CLAIM AGAINST DEFENDANT FLOYD UNDER RESPONDEAT SUPERIOR**

45.

Plaintiffs herein reallege and reincorporate the allegations above-stated in their Complaint as if said allegations had been set forth fully herein.

17

46.

At all times relevant to the incident out of which this Complaint arises, Does #1-5 were employees/agents/contractors of Defendant Floyd.

47.

The tortious conduct of Does #1-5 described throughout the Complaint was committed during and within the scope of their agency and/or employment with Defendant Floyd.

48.

As Does #1-5's principal and/or employer, Defendant Floyd is vicariously liable for the negligence of Does #1-5 under the doctrine of respondeat superior.

**DEMAND FOR JURY TRIAL**

49.

Plaintiffs demand a trial by jury on all issues that may properly be submitted to the jury.

50.

Plaintiffs demand judgment in excess of $75,000.00.

WHEREFORE, Plaintiffs pray:

1)      That service of this Complaint and Summons be perfected upon all Defendants as provided by law;

2)      That Plaintiffs have and recover of the Defendants for Plaintiffs' and William Bohannon's past, present, and future special damages;

3)      That Plaintiffs have and recover judgment against Defendants for William's general damages to be determined by the enlightened conscience of a fair and impartial jury;

4)      That Plaintiffs be awarded judgment in excess of $75,000.00;

5)      That costs of this action be borne by Defendants;

6)      That Plaintiffs have trial by jury; and

7)      That Plaintiffs have such other and further relief as this Court deems just and equitable.

This 11th day of October, 2013.

                                    **EDENFIELD, COX, BRUCE & CLASSENS, P.C.**

                                    */s/ V. Sharon Edenfield*
                                    **GERALD M. EDENFIELD**
                                    State Bar No. 239100
                                    **V. SHARON EDENFIELD**
                                    State Bar No. 141646
                                    Attorneys for Plaintiffs

P.O. Box 1700
Statesboro, GA  30459
912-764-8600
912-764-8862   facsimile

## CERTIFICATE OF FONT SIZE

Pursuant to Local Rule 7.1(D), the undersigned hereby certifies that the foregoing has been prepared in compliance with Local Rule 5.1.

This the 11th day of October, 2013.

**EDENFIELD, COX, BRUCE & CLASSENS, P.C.**

*/s/ V. Sharon Edenfield*
**V. SHARON EDENFIELD**
State Bar of Georgia No. 141646
Attorney for Plaintiffs

115 Savannah Ave.
P.O. Box 1700
Statesboro, GA 30459
912.764.8600 telephone
912.764.8862 facsimile
sharri@ecbcpc.com